UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JERE STOUDT and RETIRED TIRE MOBILE SHREDDING, LLC,<br>    Plaintiffs,<br><br>  v.<br><br>BCA INDUSTRIES, RECYCLE EQUIPMENT RENTAL LCC, IVYWOOD LLC,<br>    Defendants. | :<br>:<br>:<br>:<br>:  No. 5:22-cv-01900<br>:<br>:<br>:<br>:<br>: |

**O P I N I O N**
BCA's Motion to Dismiss, ECF No. 14 – Granted
Ivywood's Motion to Dismiss, ECF No. 16 – Granted in Part, Denied in Part
Recycle Equipment's Motion to Dismiss, ECF No. 18 – Granted

**Joseph F. Leeson, Jr.**                         **December 9, 2022**
**United States District Judge**

### I. INTRODUCTION

This case deals with a tire shredding business venture gone awry. Jere Stoudt and Retired Tire Mobile Shredding, LLC initiated this action against defendants BCA Industries, Recycle Equipment Rental, LLC, and Ivywood, LLC, for breach of fiduciary duty, conversion, civil conspiracy, breach of contract, fraudulent inducement, intentional infliction of emotional distress, tortious interference, and negligent misrepresentation. All Defendants have moved to dismiss the Complaint for failure to state a claim, and Ivywood has also moved to dismiss the Complaint for improper venue. The motions to dismiss for failure to state a claim are granted without prejudice for the reasons set forth below.

## II.     BACKGROUND

The following facts are alleged in Plaintiffs' complaint. Approximately ten years ago, Stoudt owned a service station where he struggled disposing of used tires. Compl. ¶ 4, ECF No. 1. To learn more about forming a potential tire shredding business, Stoudt contacted BCA, a company that manufactured a portable tire shredder. *Id*. ¶ 4. After speaking with John Neuens, an "officer" of BCA, for over a year, Stoudt learned about the various industrial uses and sales opportunities for shredded tires. *Id*. ¶ 5. Neuens informed Stoudt about a machine that could shred approximately two hundred tires an hour into two-inch pieces, and whose blades only needed to be sharpened after every seventy to 100,000 tires it shredded. *Id*. ¶ 6. Neuens also told Stoudt that a "normal tire count to be shredded" was approximately 30,000 tires monthly. *Id*. ¶ 7. Based on these conversations with Neuen, Stoudt began drafting a business plan and contacted over one hundred prospective clients who may be interested in buying his shredded tires. *Id*. ¶¶ 7-8. Stoudt calculated that, within one year, he could achieve gross annual sales of $650,000 with approximately $450,000 in earnings before interest, taxes, depreciation, and amortization. *Id*. ¶ 8. Thereafter, Stoudt advised Neuens that he was interested in renting a tire shredding machine, and Neuens put Stoudt in contact with Ivywood, whom Stoudt was told would buy the machine and lease it to Stoudt if Stoudt advanced a $30,000 deposit. *Id*. ¶ 9.

Neuens called Stoudt about the possibility of renting a used tire shredder, and Stoudt responded that he was interested so long as it was in good working condition and would not need major repairs in the first three to six months of starting his business. *Id*. ¶ 10. Stoudt also specified that, for Retired Tire's operability, the most important function of the machine was that it shred the tires in pieces no larger than two inches, and the machine would also need to shred

two hundred tires an hour. *Id*. ¶ 10-11. Neuens advised that the machine would meet Stoudt's specifications. *Id*. ¶ 11.

On June 4, 2021, a lease agreement (the "Contract") was entered between Stoudt's company Retired Tire, as lessee, and Ivywood, as lessor. *Id*. ¶ 11. *See* Compl. at Ex. A ("Contract"). Stoudt obtained a home equity loan and paid an advance deposit of $31,000 to Ivywood. *Id*. ¶¶ 9, 11. Stoudt also purchased a truck to pull the shredder, which cost $68,000. *Id*. ¶ 10. Stoudt paid $5,000 in transportation insurance for the truck, in addition to a monthly $1,000 payment for commercial truck insurance during Retired Tire's operation. *Id*. ¶ 10.

On June 7, 2021, Stoudt obtained possession of the machine, and immediately tried to begin operations. *Id*. ¶ 13. However, the machine failed to start and had an excess of water in its fuel lines. *Id*. Stoudt drained the water and charged the machine's battery, but thereafter, the machine began to have electrical problems. *Id*. Stoudt repaired the machine himself, and then attempted to shred tires. *Id*. Over the course of approximately five and a half hours, Stoudt was able to shred 115 tires. *Id*. After one day of work, the cutting blades were "worn down beyond repair." *Id*. The tire pieces Stoudt managed to cut were about four inches long, which were valueless for Retired Tire's intended purpose and instead could only be used as landfill items. *Id*. However, Stoudt could not afford to get dumping permission to use the tire pieces as landfill, and thereafter could not do anything with the four-inch pieces. *Id*.

As a result, Stoudt approached Neuens and demanded that he fix the machine. *Id*. ¶ 14. Neuens told Stoudt that it was possible but would cost Stoudt upwards of $18,000 and would take six to eight weeks to acquire the necessary parts. *Id*. Then Neuen proceeded to laugh and told Stoudt that he was "on his own." *Id*. At this point, Stoudt could not afford to make repairs

and Retired Tire had to cease operations.  *Id*. ¶ 15.  Stoudt sold his truck back to the dealer at a loss. *Id*. ¶ 17.

On April 25, 2022, Plaintiffs initiated this action in the United States District Court for the Middle District of Pennsylvania.  *See* Compl.  On May 16, 2022, the case was transferred to this Court.  *See* Transfer Order, ECF No. 5.  In the Complaint, which named BCA, Recycle Equipment, and Ivywood as Defendants, Plaintiffs alleged breach of fiduciary duty, conversion, civil conspiracy, breach of contract, fraud in the inducement, intentional infliction of emotional distress, tortious interference, and negligent misrepresentation.  *See* Compl.  On August 22, 2022, Defendants filed three separate motions to dismiss: (1) BCA filed a motion to dismiss for failure to state a claim, (2) Recycle Equipment filed a motion to dismiss for failure to state a claim, and (3) Ivywood filed a motion to dismiss for failure to state a claim and improper venue.  *See* ECF Nos. 14, 16, & 18.  Plaintiffs filed responses in opposition to the motions.  *See* ECF Nos. 19-22.

## III. LEGAL STANDARDS

### A. Motion to Dismiss under Rule 12(b)(6) – Standard of Review

In rendering a decision on a motion to dismiss under Rule 12(b)(6), this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."  *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted).  Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim.  *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 555 (2007)).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

(explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). Additionally, "a document integral to or explicitly relied upon in the complaint may be considered." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal quotations omitted). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

        B.       **Motion to Dismiss under Rule 12(b)(3) – Standard of Review**

"In considering a motion to dismiss for improper venue under Rule 12(b)(3), the Court must generally accept as true the allegations in the Complaint, unless contradicted by Defendants' affidavits." *Joe Hand Promotions, Inc. v. Shehadeh*, No. 18-4119, 2019 U.S. Dist. LEXIS 79206, at *4 (E.D. Pa. May 10, 2019). "Because improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant." *Great W. Mining & Mineral Co. v. ADR Options, Inc*., 434 F. App'x 83, 86 (3d Cir. 2011).

        C.       **Breach of Fiduciary Duty – Review of Applicable Law**

In Pennsylvania, "a fiduciary relationship exists where one person has reposed a special confidence in another to the extent that the parties do not deal with each other on equal terms, either because of an overmastering dominance on one side or weakness, dependence or justifiable trust, on the other." *McDermott v. Party City Corp*., 11 F. Supp. 2d 612, 626 (E.D. Pa.

1998) (internal marks omitted) (citing *Commonwealth Dep't of Transp. v. E-Z Parks*, 620 A.2d 712, 717 (Pa. Commw. Ct. 1993)).  A business relationship "may be the basis of a confidential relationship only if one party surrenders substantial control over some portion of his or her affairs to the other." *Id*. (internal marks and citation omitted).  In a claim for breach of fiduciary duty, a plaintiff must prove the following elements: "(1) that the defendant negligently or intentionally failed to act in good faith and solely for the benefit of plaintiff in all matters for which he or she was employed; (2) that the plaintiff suffered injury; and (3) that the agent's failure to act solely for the plaintiff's benefit was a real factor in bring about plaintiff's injuries[.]" *Id.* at 626, n.18 (internal marks and citation omitted).

        **D.**       **Conversion – Review of Applicable Law**

"[U]nder Pennsylvania law, conversion is the 'deprivation of another's right of property, or use or possession of a chattel, or other interference therewith, without the owner's consent and without legal justification.'" *Universal Premium Acceptance Corp. v. York Bank & Tr. Co.*, 69 F.3d 695, 704 (3d Cir. 1995) (quoting *Cenna v. United States*, 402 F.2d 168, 170 (3d Cir. 1968)).

        **E.**       **Civil Conspiracy – Review of Applicable Law**

"In Pennsylvania, 'to state a cause of action for civil conspiracy, the following elements are required: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose; (2) an overt act done in pursuance of the common purpose; and (3) actual legal damage.'" *Gen. Refractories Co. v. Fireman's Fund Ins. Co.*, 337 F.3d 297, 313 (3d Cir. 2003) (quoting *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987-88 (Pa. Super. Ct. 1997)).  Additionally, proof of malice is an essential part of a conspiracy claim. *See Lackner v. Glosser*, 2006 PA Super 14, 892 A.2d 21, 35 (Pa. Super. 2006) (citation omitted). The first element

> "may be proved by acts and circumstances sufficient to warrant an inference that the unlawful combination had been in point of fact formed for the purpose charged. While conspiracy may be proved by circumstantial evidence, the evidence must be full, clear and satisfactory. Mere suspicion or the possibility of guilty connection is not sufficient, nor proof of acts which are equally consistent with innocence."

*Scully v. US WATS, Inc.*, 238 F.3d 497, 516 (3d Cir. 2001) (internal marks omitted) (citing *Fife v. Great Atl. & Pac. Tea Co.*, 52 A.2d 24, 27 (Pa. 1947)). "'[A]bsent a civil cause of action for a particular act, there can be no cause of action for civil conspiracy to commit that act.'" *NSI Nursing Sols., Inc. v. Volume Recruitment Servs., LLC*, No. 17-1613, 2019 U.S. Dist. LEXIS 17170, at *22 (E.D. Pa. Feb. 4, 2019) (internal quotation and citation omitted).

    **F.    Breach of Contract – Review of Applicable Law**

"Under Pennsylvania law, a contract is formed when the parties (1) reach a mutual understanding, (2) exchange consideration, and (3) delineate the terms of the bargain with sufficient clarity." *Tuff Wrap Installations Inc. v. Cleanwrap, Inc.*, No. 11-2576, 2011 U.S. Dist. LEXIS 70543, at *18 (E.D. Pa. June 29, 2011) (citing *Weavertown Transport Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. 2003)). To establish a breach of contract claim, the plaintiff "must establish each of the following elements: (1) existence of a contract; (2) that the defendant breached a duty . . . imposed by that contract; and (3) damages caused by the breach." *Revzip, LLC v. McDonnell*, No. 19-191, 2019 U.S. Dist. LEXIS 211836, at *10-11 (W.D. Pa. Dec. 9, 2019) (citing *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)). "Courts can resolve contract disputes on a motion to dismiss if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading, because the interpretation of an unambiguous contract is a matter of law for the court." *Freedom Props., L.P. v. Lansdale*

*Warehouse, Inc.*, No. 06-5469, 2007 U.S. Dist. LEXIS 57116, at *3 (E.D. Pa. Aug. 2, 2007) (internal quotation and citation omitted).

### G. Fraud – Review of Applicable Law

A fraud claim in Pennsylvania consists of six elements: (1) the defendant made a misrepresentation or concealment; (2) "[w]hich [was] material to the transaction at hand;" (3) the misrepresentation was "[m]ade with knowledge of its falsity" or reckless disregard for the truth, or the concealment was "calculated to deceive"; (4) the defendant intended to "mislead[] another into relying on it;" (5) the plaintiff "[j]ustifiabl[ly] reli[ed] on the misrepresentation;" and (6) the plaintiff's injury was proximately caused by that reliance. *SodexoMAGIC*, LLC v. Drexel Univ., 24 F.4th 183, 205 (3d Cir. 2022) (citing *Gibbs v. Ernst*, 647 A.2d 882, 889, n.12 (Pa. 1994); *Youndt v. First Nat'l Bank of Port Allegany*, 868 A.2d 539, 545 (Pa. Super. Ct. 2005)). "A claim for fraudulent inducement [also] requires proof of the six elements and is available when a person under no duty to enter a contract was deceived into doing so." *Id.* at 206 (citing *Coll. Watercolor Grp., Inc. v. William H. Newbauer, Inc.*, 360 A.2d 200, 206 (Pa. 1976); Justin Sweet, *Promissory Fraud and the Parol Evidence Rule*, 49 Calif. L. Rev. 877, 888 (1961) ("Fraud in the inducement occurs when one party, by means of false statements of fact, warranties, or promises, misleads another into contracting.")).

Additionally, under the Federal Rules of Civil Procedure, plaintiffs are subject to a heightened pleading standard for fraud, as required by Rule 9(b), which provides that "a party must state *with particularity* the circumstances constituting fraud[.]" Fed. R. Civ. Pro. 9(b) (emphasis added). Further,

> to place the defendant on notice of the precise misconduct with which it is charged, a plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation,

and must allege who made a misrepresentation to whom and the general content of the misrepresentation.

*Hlista v. Safeguard Props., LLC*, 649 Fed. Appx. 217, 221 (3d Cir. 2016) (cleaned up) (citations omitted).

### H. Intentional Infliction of Emotional Distress – Review of Applicable Law

In Pennsylvania, "a claim for intentional infliction of emotional distress requires a plaintiff to establish the following elements: '(1) the conduct must be extreme or outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe.'" *Rosembert v. Borough of E. Lansdowne*, 14 F. Supp. 3d 631, 645 (E.D. Pa. 2014) (quoting *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).  Pennsylvania courts have been reluctant to declare conduct "outrageous," requiring that "the conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *See e.g.*, *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988) (quoting *Buczek v. First Nat'l Bank*, 531 A.2d 1122, 1125 (Pa. Super. 1987)); *Kornegey v. City of Philadelphia*, 299 F. Supp. 3d 675, 683 (E.D. Pa. 2018). "Additionally, Pennsylvania law requires that some type of physical harm be shown in order to satisfy the severe emotional distress element." *Villarosa v. N. Coventry Twp.*, No. 15-4975, 2016 U.S. Dist. LEXIS 98499, at *34 (E.D. Pa. July 28, 2016) (citing *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 691 (E.D. Pa. 2009)).

### I. Tortious Interference – Review of Applicable Law

> Under Pennsylvania law, to prevail on a claim for tortious interference with existing or prospective contractual relationships, a party must prove: (1) the existence of a contractual or prospective contractual or economic relationship between the plaintiff and a third party; (2) purposeful action by the defendant, specifically

>intended to harm an existing relationship or intended to prevent a prospective relation from occurring; (3) the absence of privilege or justification on the part of the defendant; (4) legal damage to the plaintiff as a result of the defendant's conduct, and (5) for prospective contracts, a reasonable likelihood that the relationship would have occurred but for the defendant's interference.

*Acumed LLC v. Advanced Surgical Servs.*, 561 F.3d 199, 212 (3d Cir. 2009) (citation omitted).

### J.     Negligent Misrepresentation – Review of Applicable Law

In Pennsylvania, a claim for negligent misrepresentation contains the following four elements: "1) a misrepresentation of a material fact; 2) made under circumstances in which the misrepresenter ought to have known its falsity; 3) with an intent to induce another to act on it; and 4) which results in injury to a party acting in justifiable reliance on the misrepresentation." *Howe v. LC Philly, LLC*, No. 10-5495, 2011 U.S. Dist. LEXIS 41534, *14 (E.D. Pa. April 15, 2011) (internal quotation omitted) (citing *Smith v. Lincoln Ben. Life Co.*, 395 Fed. Appx. 821, 824 (3d Cir. 2010)).

## IV.    ANALYSIS

### A.     12(b)(3) Motion

Ivywood relies solely on the Contract's forum selection clause to argue that this Court is the improper venue.  However, a Rule 12(b)(3) motion is not the appropriate avenue to enforce a forum selection clause.  As the Supreme Court has explained,

>[w]hen venue is challenged, the [district] court must determine whether the case falls within one of the three categories set out in [28 U.S.C.] § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under §1406(a). *Whether the parties entered into a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)*. As a result, a case filed in a district that falls within § 1391 may not be dismissed under § 1406(a) or Rule 12(b)(3).

*Atl. Marine Constr. Co. v. U.S. Dist. Court*, 571 U.S. 49, 56 (2013) (emphasis added).

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Id*. at 60. "A successful motion under *forum non conveniens* requires dismissal of the case." *Id*. at 66 n.8 (citing *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)). "Dismissal works no injustice on the plaintiff, because such a plaintiff has violated a contractual obligation by filing suit in a forum other than the one specified in a valid forum-selection clause." *123 Exteriors, Inc. v. N. Star Exteriors*, LLC, No. 17-4337, 2018 U.S. Dist. LEXIS 128748, *11 (E.D. Pa. Aug. 1, 2018) (cleaned up).

Here, Retired Tire was formed in Reading, Pennsylvania, where the alleged malfunction of the shredding equipment occurred, and therefore venue is proper under 28 U.S.C. § 1391(b). *See* 28 USCS § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred[.]"). Because the choice of law and forum selection clause points to a state forum, the clause could be enforced through the doctrine of *forum non conveniens*. However, Ivywood fails to make any legal argument based on *forum non conveniens*, and the only case Ivywood cites to in its 12(b)(3) argument, *Krenkel v. Kerzner Int'l Hotels Ltd*, 579 F.3d 1279 (11th Cir. 2009), likewise does not apply or rely on the *forum non conveniens* doctrine in that case's decision to affirm the enforcement of the forum selection clause. Therefore, this Court will not construe Ivywood's 12(b)(3) motion as one for dismissal under *forum non conveniens*. Accordingly, Ivywood's 12(b)(3) motion is denied.

    **B.**    **12(b)(6) Motions**

    **1.**    **Breach of Fiduciary Duty**

Plaintiffs fail to state a breach of fiduciary duty claim. At no point in the Complaint do Plaintiffs allege that Retired Tire "surrender[ed] substantial control" of a portion of its business

to any of Defendants. Nor do Plaintiffs allege that Defendants were agents of Retired Tire or owed Retired Tire or Stoudt any kind of fiduciary duty. Therefore, Plaintiffs have not pleaded facts that give rise to a confidential or fiduciary relationship with any of Defendants, and the breach of fiduciary duty claim is dismissed without prejudice.

    **2.**    **Conversion**

Plaintiffs fail to state a claim for conversion. Simply put, Plaintiffs do not allege at any point that Defendants interfered with the use of Plaintiffs' property. Plaintiffs clearly state that they did not own the tire shredding machine at issue, but were leasing it from Ivywood, and therefore Plaintiffs cannot state a conversion claim over this chattel. Plaintiffs' conversion claim is therefore dismissed without prejudice.

    **3.**    **Civil Conspiracy**

Plaintiffs have failed to state a civil conspiracy claim. Here, Plaintiffs allege that "[t]he above actions and inactions of the Defendant were committed intentionally, deliberately, maliciously and fraudulently thereby imposing liability on the defendants for punitive damages as well as compensatory damages, and entitling the plaintiff to injunctive relief." Compl. ¶ 24. However, Plaintiffs do not specify which defendant they are referring to, nor which combination of the defendants allegedly conspired against Plaintiffs. Apart from that lack of specificity, Plaintiffs also do not indicate which stand-alone offense Defendants conspired to commit, only that Plaintiffs are entitled to relief due to their damages, that Defendants acted "outrageous[ly,]" and that Defendants' actions were intentional. Such conclusory allegations amount at most to "[m]ere suspicion or the possibility of guilty connection" which falls short of stating a plausible claim for civil conspiracy. Plaintiffs' civil conspiracy claim is therefore dismissed without prejudice.

### 4. Breach of Contract

Plaintiffs have failed to state a breach of contract claim.[1] The only contract at issue appears to be Plaintiffs' lease agreement with Ivywood, which Plaintiffs attached as Exhibit A to the Complaint. But Plaintiffs do not specify which term or duty of the Contract was breached. Presumably, Plaintiffs view the alleged equipment misdescription or failure as a breach. However, the Contract at issue contains the following language, "Lessee has fully inspected the equipment which it has requested Lessor to acquire and lease to Lessee, and the Equipment is in good condition and to Lessee's complete satisfaction[.]" Contract p. 1.

Here, the above-quoted provision of the Contract is straightforward, and expressly declares that Plaintiffs inspected the equipment and found it to be in good condition at the time of entering into the Contract. Since Plaintiffs do not point to any contractual duty breached by Ivywood, and because this Court "can resolve contract disputes on a motion to dismiss if the claims under which the plaintiff seeks relief are barred by the unambiguous terms of a contract attached to the pleading," *see Freedom Props.*, No. 06-5469, 2007 U.S. Dist. LEXIS 57116, at *3 (internal marks and citation omitted), Plaintiffs breach of contract claim against Ivywood is dismissed without prejudice. As for the other defendants, BCA and Recycle Equipment, Plaintiffs do not even allege the existence of a contractual relationship, and therefore the breach of contract claims against these defendants are also dismissed without prejudice.

### 5. Fraud

Plaintiffs have failed to state a fraud claim against Defendants. Here, Plaintiffs allege that "[a]s a direct and proximate result of the Defendant's misrepresentations, particularly those

---

[1] In their responsive brief to the motions, Plaintiffs argue they have stated a claim based on a promissory estoppel or detrimental reliance theory of restitution. However, these theories appear nowhere in the Complaint and will not be addressed by this Court.

stated by Defendant's duly authorized agents that: 1) the shredder would cut two[-]inch tire pieces and; 2) that the shredder was in good working order and repair[, Plaintiffs] suffered direct losses and consequential damages in excess of Five Hundred Thousand ($500,000) Dollars." Compl. ¶ 28. Further, Plaintiffs allege that "Defendant's actions were willful, vexatious, malicious and without reasonable justification or excuse.  These actions were undertaken by the Defendant with the sole intent to harm the Plaintiffs and wrongfully expose them to individual loss." Compl. ¶ 29.

In general, Plaintiffs' fraud claim lacks the required specificity under Rule 9(b).  According to the recitation of facts, the alleged fraudulent statements appear to have been made by Neuens, whom Plaintiffs refer to as an "officer" of BCA.[2]  However, in the pleadings, Plaintiffs vaguely, and somewhat conflictingly, aver that the statements were made by "Defendant's duly authorized agents[,]" without specifying *which* defendant was the principal and *whom* acted as its agents (plural).  At no point do Plaintiffs explain Recycle Equipment's role in the above events, even though Recycle Equipment is a named defendant.  As explained by the Third Circuit, "Rule 9(b) is not satisfied where a plaintiff, . . . merely lumps the who, what, when, and where together." *Riachi v. Prometheus Grp.*, 822 Fed. Appx. 138, 142 (3d Cir. 2020) (citing *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) ("Rule 9(b) is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'"); *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990) (holding that Rule 9(b) was not satisfied where "the complaint lump[ed] all the defendants together and d[id] not specify who was involved in what activity")).

---

[2]   In its motion to dismiss, BCA asserts that Neuens is an independent contractor who made sales for BCA, but that Neuens has "never been an employee, let alone officer, of BCA."  However, at this stage of the litigation, the Court must accept the pleaded facts as true.

Further, the timetable of when the fraudulent statements were made is not sufficiently specific. Plaintiffs allege that (1) "[a]pproximately ten years ago, [Stoudt] owned a service station"; (2) Stoudt "spent over a year talking with" Neuens "about how the tire shredding business works"; (3) Plaintiffs signed the contract with Ivywood on June 4, 2021; and (4) Stoudt picked up the shredder on June 7, 2021, the same day he discovered the issues with the machine. Compl. ¶¶ 4, 5, 11, 12, 13.  This timetable falls shorts of alleging "the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into [the] fraud allegation," as required under the specificity requirements of Rule 9(b).  *See Hlista*, 649 Fed. Appx. at 221 (cleaned up).  Thus, for the foregoing reasons, Plaintiffs' fraud claim is dismissed without prejudice.

### 6. Intentional Infliction of Emotional Distress

Plaintiffs fail to state a claim for intentional infliction of emotional distress.  Plaintiffs allege that, through various misrepresentations, "Defendant tortuously interfered with Plaintiff's actions and intentionally has caused the Plaintiff great emotional pain and loss and have engaged in egregious and vexatious activity to harm the Plaintiff[.]" Compl. ¶ 32.  However, despite these conclusory allegations, Plaintiffs fail to allege any "outrageous" conduct conducted by Defendants.  As previously explained, Pennsylvania courts require the plaintiff to allege conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society." *See Cox*, 861 F.2d at 395 (citation omitted).  Plaintiffs merely allege that one, or possibly more, of the defendants misrepresented the condition and performance abilities of the tire shredding equipment they leased.  Though unscrupulous, such misrepresentations do not rise to the level of "outrageous" required in Pennsylvania.  Further, Plaintiffs do not allege any type of physical

harm to satisfy the severe emotional distress element. Plaintiffs' intentional infliction of emotional distress claim is therefore dismissed without prejudice.

### 7. Tortious Interference

Plaintiffs fail to state a claim for tortious interference. Plaintiffs do not specify what contractual or economic relationship was tortiously interfered with, nor do they specify which of the defendants committed the alleged purposeful action that interfered with such relationship. Plaintiffs' tortious interference claim is therefore dismissed without prejudice.

### 8. Negligent Misrepresentation

Plaintiffs fail to state a claim for negligent misrepresentation. In its entirety, Plaintiffs' misrepresentation claim provides that "Plaintiff restates all previous allegations[,]" and "Plaintiff has been damaged and incurred financial loss by the foregoing conduct in that the Plaintiff has been damaged in an amount in excess of Seven Hundred Fifty Thousand ($750,000) Dollars." Compl. ¶¶ 34-35. This Court has generously interpreted this as an attempted negligent misrepresentation claim based on Count V of the Complaint's caption, which is simply labeled, "Misrepresentation." However, Plaintiffs do not recite any of the elements of this claim, nor do they specify in this Count which of the defendants they allege committed this offense. In fact, Defendants do not appear to be on notice of this claim, as none of them mention or argue it in their motions to dismiss. *See Twombly*, 550 U.S. at 555 (holding that Rule 8(a)(2) requires a "short and plain statement" in order to give defendants "fair notice of what the . . . claim is and the grounds upon which it rests"). Plaintiffs' negligent misrepresentation claim is therefore dismissed without prejudice.

## V.     CONCLUSION

Plaintiffs have failed to state a claim for relief for their claims of breach of fiduciary duty, conversion, civil conspiracy, breach of contract, fraudulent inducement, intentional infliction of emotional distress, tortious interference, and negligent misrepresentation and, as a result, these claims are dismissed without prejudice and the Defendants' motions to dismiss under Rule 12(b)(6) are granted.  Ivywood's motion to dismiss for improper venue is denied.

Because this Court cannot say for certain at this time whether amendment would be inequitable or futile, it must permit Plaintiffs the opportunity to amend the Complaint. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Accordingly, Plaintiffs are granted leave to amend their Complaint. Plaintiffs are advised that an amended complaint, if filed, must set forth the causes of action in separate, clearly labeled sections which specifically recite the necessary elements of each claim and the relevant factual support for each element.  Any amendment must be made in compliance with the time frame set forth in the Order attached to this Opinion.

A separate order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*_____
JOSEPH F. LEESON, JR.
United States District Judge